GUARANTEE FOOD COMPANY *vs.* CONSUMERS FUEL COMPANY.

Waldo.    Opinion February 26, 1924.

*In an action upon a trade acceptance or draft drawn by plaintiff on and accepted by defendant, there is no variance merely because the clause in the acceptance, "The obligation of the acceptor hereof arises out of the purchase of merchandise from the drawer" was omitted from the declaration. This clause formed no part of the actionable contract and was merely surplusage.*

The jury found in this case that the merchandise for which the acceptances were given was not commerical feeding stuff within the definition prescribed by R. S., Chap. 36, Sec. 2, and that there was no misbranding. This finding was justified by the evidence.

On exceptions and motion for a new trial. An action of assumpsit brought by plaintiff, a corporation located at Lewisburg, Pennsylvania, to recover of defendant, a corporation located at Belfast, Maine, on two trade acceptances. The defendant pleaded the general issue, and among other things set up under a brief statement as a defense that the merchandise for which the acceptances were given was not branded according to the requirements of the laws of this State. The case was tried before a jury and a verdict rendered for the plaintiff, and the defendant excepted to the ruling of the presiding Justice admitting certain documentary evidence, and also filed a general motion for a new trial.

Motion and exceptions overruled.

The case is fully stated in the opinion.

*Clyde R. Chapman,* for plaintiff.

*Arthur Ritchie,* for defendant.

SITTING: CORNISH, C. J., HANSON, PHILBROOK, DUNN, WILSON, DEASY, JJ.

CORNISH, C. J. Assumpsit upon two trade acceptances, or drafts drawn by the plaintiff on the defendant and accepted by the defendant. They are in the following form:

"Trade Acceptances.

$187.50                    Lewisburg, Pa., April 14, 1922.

Sixty days (60) after date pay to the order of Guarantee Food Company of Pennsylvania one hundred and eighty-seven 50-100 dollars.

The obligation of the acceptor arises out of the purchase of merchandise from the drawer.

To Consumers Fuel Co.          Value received and
  by C. B. Holmes, Pres.       charge same to account
  address Belfast, Maine.       of Guarantee Food Company
                                of Pennsylvania
                                By Thomas Cummins."

The other was identical in form and amount except that the due date was ninety days instead of sixty.

The Consumers Fuel Company accepted each by writing its name across the face, thereby agreeing to pay the drafts according to their tenor.

The jury rendered a verdict in favor of the plaintiff for $406.66, the full amount due, and the case is before this court on defendant's exception and motion.

EXCEPTION.

The exception relates to a single point, the admission of the trade acceptances in evidence when offered by the plaintiff, the defendant contending that they should have been excluded on the ground of a variance between the acceptances and the declaration, the latter having omitted the clause: "The obligation of the acceptor hereof arises out of the purchase of merchandise from the drawer."

This point is not well taken. The clause omitted forms no part of the actionable contract between the parties. It is mere surplusage. The draft contains the words "Value received" and they make a prima facie case for the plaintiff. What the nature of the consideration was is unimportant so far as the declaration is concerned. If there was in fact a failure of consideration, as the defendant alleged in its pleadings, that defense is still open to the defendant in evidence, the burden being upon it to prove the fact.

The defendant takes nothing by the exception.

MOTION.

What the defense relied on was, first, that the merchandise for which the acceptance was given was commercial feeding stuff within the definition prescribed by the statute: "All articles of food used for feeding live stock and poultry, except hays and straws, the whole seeds and the unmixed meals made directly from the entire grains of wheat, rye, barley, oats, Indian corn, buckwheat, flaxseed and broom corn." R. S., Chap. 36, Sec. 2; and second, that the merchandise was not properly branded according to law.

These were questions of fact and were submitted to the jury under clear and proper instructions. The name of the commodity was the

"Keystone Stock Conditioner," and whether that was commercial feeding stuff within the statutory definition or a sort of animal tonic, like the old-fashioned condition powders, so called, was the disputed point. The burden was on the defendant to prove that it was a commercial feeding stuff. It did not satisfy the jury on that question and the evidence does not convince us that the finding was manifestly wrong. No analysis was offered, and no satisfactory statement as to its ingredients, qualities and uses. Mr. Holmes, the president of the defendant corporation, frankly admitted when the question was put to him squarely, that he did not know whether this is what is called a commercial feeding stuff or a stock conditioner. The name itself, "Keystone Stock Conditioner," would strongly imply that it was merely a conditioner unless it was a misnomer. The evidence offered by the defendant on this point was, at the best, vague, uncertain and indefinite, falling far below the standard which the burden of proof required.

As to misbranding, this becomes unimportant if the merchandise was not a commercial feeding stuff. But the evidence on this contention is equally indefinite and unconvincing. The fact, if necessary, was not proven.

It is significant on both these issues of fact that the only complaint made by the defendant in its letter of May 18, 1922, after the arrival of the goods, was that they had arrived in very bad condition, the bags being broken open, etc., nothing as to the nature of the commodity or its being misbranded. The fault complained of is not attributable to the plaintiff, while those now set up were not in mind at the time.

*Exception and motion overruled.*